# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

TERESA WALDRUP,                          :

    Plaintiffs,                          :

vs.                                      :          CA 11-0120-KD-C

ALLSTATE INSURANCE CO., et al., :

    Defendants.

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the notice of removal (Doc. 1), the defendants' motion to dismiss Morris Insurance Services, Inc. ("Morris") as a party defendant (Doc. 5), the plaintiff's response (Doc. 8), and the moving parties' reply (Doc. 9). Upon consideration of the foregoing pleadings, the Magistrate Judge recommends that this Court **DENY** the motion to dismiss (Doc. 5) and **REMAND** this action to the Circuit Court of Washington County, Alabama inasmuch as it is clear that plaintiff has asserted viable fraud claims against Morris such that no finding can be made that Morris was fraudulently joined to defeat diversity jurisdiction in this matter. Because complete diversity

of citizenship does not exist in this case, this Court cannot exercise subject-matter jurisdiction.[1]

## FINDINGS OF FACT

1.    On September 17, 2009,[2] Teresa Waldrup was issued an Allstate Indemnity Company Manufactured Home Policy, Policy #9 15 991886, by Allstate agent (and Waldrup's agent) Morris Insurance Services, Chatom, Alabama for a one-year period ending on September 17, 2010. (*Compare* Doc. 1, Exhibit A, COMPLAINT, at ¶ 7 *with id*., Exhibit C, Policy Declarations & Policy.)[3] Page 2 of the Policy Declarations reflects the policy coverages and limits of liability. (Doc. 1, Exhibit C, Policy Declarations, at 2.) This page reflects dwelling coverage of $68,393.00-based upon Allstate's estimated cost of replacing the dwelling-and personal property protection-actual cash value-of $34,197.00.

---

[1]    Given the recommended disposition of this case, the undersigned will not enter a Rule 16(b) scheduling order. (*See* Doc. 11 (the parties' Rule 26(f) report).)

[2]    Plaintiff filed an insurance application one day earlier. (*See* Doc. 9, Exhibit 1.) The application reflects that Waldrup's manufactured home was a model year 2000 purchased in December of 1999 and was encumbered by a mortgage. (*See id*.) Page 2 of the application reflects the policy limits ($68,393 for the dwelling and $34,197 for personal property) and page 3 reflects the estimated replacement cost for a new manufactured home of $68,393, with the specific notation that such amount was "not [plaintiff's] policy limit." (*Id*.) "If you have selected the Actual Cash Value endorsement, depreciation will be a factor taken into consideration to develop your premium. In the event of a covered loss, there **may** be a deduction for depreciation applied to any payment we make[.]" (*Id*. (emphasis supplied).)

[3]    Defendant Morris did not adjust plaintiff's claims nor was it a signatory to the insurance contract. (*See* Doc. 1, Exhibit B, Affidavit of Ralph Morris, at ¶ 5.)

(*Id.* at 2-4; *see also* Doc. 1, Exhibit A, COMPLAINT, at ¶¶ 8-9 ("Pursuant to said policy, the limit of liability for dwelling protection was sixty-eight thousand three hundred ninety-three dollars ($68,393.00). Said amount was based upon the Defendant's estimated cost to replace the home. The 'estimated cost to replace' is the minimum amount for which the Defendants will issue a Manufactured Home Policy. [] Pursuant to said policy, the limit of liability for personal property protection was thirty-four thousand one hundred ninety-seven dollars ($34,197.00). Said amount was based upon the actual cash value of the personal property.").)[4]

---

[4] The policy of insurance also set forth how Allstate would pay for any loss. (*Compare* Doc. 1, Exhibit B, Morris aff., at ¶ 5 *with id.*, Exhibit C, Allstate Indemnity Company Manufactured Home Policy, at 19.)

> 5. **How We Pay For A Loss**
> Under **Coverage A—Dwelling Protection,**
> **Coverage B—Other Structures Protection** and
> **Coverage C—Personal Property Protection,**
> payment for covered loss will be by one or more of
> the following methods:
>
> > a) Special Payment. At **our** option, **we** may make
> > payment for covered loss before **you** repair, rebuild or
> > replace the damaged, destroyed or stolen property if:
> >
> > > 1) the whole amount of loss for
> > > property covered under **Coverage A—**
> > > **Dwelling Protection** and **Coverage B—Other**
> > > **Structures Protection**, without deduction for
> > > depreciation, is less than $2,500 and if the
> > > property is not excluded from the Building
> > > Structure Reimbursement provision, or;

(Continued)

2)    the whole amount of loss for property covered under **Coverage C— Personal Property Protection** without deduction for depreciation, is less than $2,500 and if **your** Policy Declarations shows that the Personal Property reimbursement provision applies, and the property is not excluded from the Personal Property Reimbursement provision.

b)    Actual Cash Value. If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

(*Id.* (emphasis in original).) In addition, included in the documents sent to Waldrup was an "**Important Notice**," same reading, in part, as follows:

Your Coverage A—Dwelling Protection limit is: <u>$68,393</u>

The Coverage A—Dwelling Protection limit shown above is based on information that you have provided to us.

The decision regarding the limit amount applicable to your Coverage A—Dwelling Protection is your decision to make, as long as, at a minimum, you purchase a Coverage A limit equal to the estimated cost to replace your dwelling as determined by Allstate and do not exceed maximum coverage limitation established by Allstate (we will let you know if the amount of insurance you request is greater than that which we allow).

It is important to keep in mind that the minimum Coverage A limit for which we will insure your dwelling reflects an estimate based on selected data that was available to us when we made this estimate (this data is described further below). The actual amount it will cost to replace your covered dwelling cannot be known until after a covered total loss has occurred, so it is important for you to

(Continued)

4

2.  On October 28, 2009, Waldrup suffered the total loss of her manufactured home as a result of a fire. (Doc. 1, Exhibit A, COMPLAINT, at ¶ 10.) Allstate declared the plaintiff's home a total loss subsequent to the fire. (*Id*. at ¶ 11.)

3.  At the time of the fire, Waldrup's home was financed through Vanderbilt Mortgage; the balance of the mortgage was approximately $51,377.00. (*Id*. at ¶ 12.)[5]

4.  On November 13, 2009, plaintiff signed and mailed to Allstate a Sworn Statement in Proof of Loss. (Doc. 1, Exhibit D, Sworn Statement in Proof

---

let us know now, before a covered total loss occurs, if you would like to change your Coverage A limit.

**How is the estimated cost to replace your dwelling determined?**

Many factors can affect the cost to replace your dwelling, including but not limited to age, size[,] style and type of manufactured home, as well as other characteristics of the dwelling, including information that you provided to us. If you have chosen to insure your dwelling for a limit that is greater than our estimated cost to replace your dwelling, which is the minimum amount for which we will insure your dwelling, your Policy Declarations indicate this choice. And if you would like to make any changes to the Coverage A limit, please contact us.

(*Id*. at 4.)

[5]  Defendants knew when they issued the policy that there was a lien holder. (*Compare* Doc. 1, Exhibit A, COMPLAINT, at ¶¶ 12 & 13 *with id.*, Exhibit C, Policy Declarations, at 1 (showing mortgagee/lien holder to be Vanderbilt Mortgage).)

of Loss.) Therein, plaintiff made claim for $102,590.00-the limits of her coverage-for her destroyed residence and personal property. (*Compare id. with* Doc. 1, Exhibit C, Policy Declarations, at 2.)

5.     Allstate issued a check payable to Vanderbilt Mortgage for "'payment for Dwelling for Fire'" on March 9, 2010 in the amount of $25,894.24[6] and, on March 22, 2010, issued a check payable to Waldrup for "'payment for Unscheduled Personal Property for Fire'" in the amount of $12,168.75. (Doc. 1, Exhibit A, COMPLAINT, at ¶¶ 13 & 14.)

6.     Because the defendants refused to pay Waldrup the limits of her policy (*compare id*. at ¶ 15 *with* Doc. 1, Exhibit E, April 12, 2010 Letter from C. Robert Montgomery, Esq. to Allstate Indemnity Company's Michael Rocchio ("I

---

[6]     On March 9, 2010, Allstate penned a letter to Waldrup and explained therein that the full cost of repair or replacement is $62,900, the recoverable depreciation is $37,005.76, and the actual cash value (of the loss and payment) is $25,894.24. (Doc. 9, Exhibit 2.)

> Depreciation has been deducted from the full cost of the repair or replacement to your property to determine the actual cash value.
>
> To make a claim for the recoverable depreciation for an amount in excess of actual cash value, you must repair, rebuild or replace the damaged property within 180 days of the actual cash value payment. Please mail your receipts and any other documentation (building permits, contracts, invoices, etc.) to support that the repair or replacement has been completed within the 180 days period. In no event will the actual cash value payment and supplemental payment exceed the amount actually and necessarily spent, less the deductible.

(*Id*.)

represent Ms. Teresa Waldrup in connection with your company's failure to pay Ms. Waldrup for the total loss which she sustained as a result of the fire which occurred on October 28, 2009. If the policy limits are not paid to Ms. Waldrup within fourteen (14) days of the date of this letter, we will file suit against Allstate and its agent, Morris Insurance Services, in the Circuit Court of Washington County, Alabama for all legal remedies available to Ms. Waldrup.")), plaintiff filed this breach of contract, bad faith, and fraud action against named defendants Allstate Insurance Company, Allstate Indemnity Company, and Morris Insurance Services, Inc., as well as fictitious parties, in the Circuit Court of Washington County, Alabama on February 8, 2011 (Doc. 1, Exhibit A, COMPLAINT). The complaint, as to Morris, reads, in relevant part, as follows:

<u>COUNT I</u>

16.     The Plaintiff adopts and incorporates by reference the allegations contained in Paragraphs 1 through 15 of this Complaint.

17.     On or about September 17, 2009, the Defendants insured the Plaintiff's home against loss or injury by fire and other perils in a policy of insurance.

18.     The Plaintiff's home was wholly destroyed by fire on the 28th day of October, 2009, of which the Defendants had notice.

19.     The Defendants breached their contract with Plaintiff in failing and refusing to pay those insurance benefits to which Plaintiff is entitled under the policy.

WHEREFORE, the Plaintiff demands judgment against the Defendant in the sum of $64,527.01, plus interest and costs of this proceeding.

## COUNT II

20.     The Plaintiff adopts and incorporates by reference the allegations contained in Paragraphs 1 through 19 of this Complaint.

21.     Pursuant to the terms of the policy, the Defendant insurer had a duty of good faith and fair dealing with the Plaintiff and was obligated to pay the Plaintiff's claim.

22.     The Defendants intentionally refused to pay the full amount of the Plaintiff's claim.

23.     There exists no reasonably legitimate, arguable or debatable reason for the Defendant's refusal to pay.

24.     The Defendants had knowledge that there was no reasonably, legitimate, arguable or debatable reason for the refusal to pay or otherwise failed to determine whether there was an arguable or legitimate reason.

25.     As a proximate result of the bad faith of Defendants, Plaintiff was caused to suffer emotional and mental distress. She has been embarrassed, humiliated and otherwise injured.

WHEREFORE, Plaintiff demands judgment against Defendants in such sum as a jury may deem proper for compensatory and punitive damages, interest and cost.

## COUNT III

26.     The Plaintiff adopts and incorporates by reference the allegations contained in Paragraphs 1 through 25 of this Complaint.

27.     The Defendants defrauded Plaintiff and misrepresented material facts upon which Plaintiff relied to her detriment. Said misrepresentations of material facts and fraud were committed

willfully and maliciously and with the intent to defraud and deceive Plaintiff.

28.    The Defendants committed said fraud by representing the following to the Plaintiff:

(A)  That upon payment of the first month's premium, coverage would be in existence for the loss or damage to Plaintiff's home due to fire.

(B)  That upon a total loss of the home due to fire, the Plaintiff would be entitled to benefits under the policy in the amount of $68,393.00 with respect to the dwelling.

(C)  That upon a total loss of the home and its contents, the Plaintiff would be entitled to benefits under the policy in the amount of $34,197.00 with respect to her personal property.

29.    The Plaintiff relied upon said misrepresentations to her detriment.

30.    The Defendants accepted Plaintiff's premium payments for said insurance coverage. When Plaintiff made a claim pursuant to the policy of insurance, the Defendants refused to pay the full amounts of the claim.

31.    As a proximate consequence of the fraud and misrepresentations of the Defendants, Plaintiff has suffered the following damages: She has been without the payments due under said policy of insurance and has suffered emotional and mental distress as a result of said fraud and misrepresentation. She has been embarrassed, humiliated and otherwise injured.

WHEREFORE, Plaintiff demands judgment against Defendants in such sum as a jury may deem proper for compensatory and punitive damages, interest and cost.

<u>COUNT IV</u>

32.     The Plaintiff adopts and incorporates by reference the allegations contained in Paragraphs 1 through 31 of this Complaint.

33.     The Defendants failed to disclose to the Plaintiff that she would not receive the full benefits under the policy upon a total loss of her home.

34.     The Defendants failed to disclose the method by which the amount of the benefits to be paid under the policy would be calculated.

35.     As a proximate result of her lack of knowledge, the Plaintiff acted to her detriment.

36.     As a proximate result of the Defendants' failure to disclose and/or suppression, Plaintiff has suffered the following damages: She has been without the payments due under said policy of insurance and has suffered emotional and mental distress as a result of said fraud and misrepresentation. She has been embarrassed, humiliated and otherwise injured.

WHEREFORE, Plaintiff demands judgment against Defendants in such sum as a jury may deem proper for compensatory and punitive damages, interest and cost.

(*Id.* at 5-8.)

7.     Allstate was served with the complaint on February 11, 2011 (*see* Doc. 1, Exhibit A, Domestic Return Receipts)[7] and timely removed same to this Court on March 11, 2011 in accordance with the first paragraph of 28 U.S.C. § 1446(b) (*see* Doc. 1, ¶ 1 ("This case is being removed within 30 days of receipt of

---

[7]     Morris was personally served with the complaint on February 10, 2011. (*See id.*, Service Return.)

service and well within one year of the commencement of this action.")). In the removal petition, the removing defendants argue that the citizenship of defendant Morris need be disregarded by this Court inasmuch as "it is clear that Plaintiff has no colorable cause of action and that Morris Insurance Services, Inc. has been fraudulently joined." (Doc. 1, at ¶ 14; *see also id.* at ¶ 16 ("As this Court is well aware, fraudulent joinder exists where there is no possibility that the Plaintiff will be able to establish a cause of action against the resident Defendant or there has been an outright fraud in the Plaintiff's pleading of jurisdictional facts. Here the Plaintiff has alleged a specific theory of misrepresentation and suppression against the fraudulently joined Defendant in [an] attempt to avoid the jurisdiction of this Court. However, the analysis provided *supra* and the attached exhibits demonstrate that these claims are not colorable under binding Alabama case law precedent. Plaintiff has simply disregarded the policy and attempted, in the face of clear policy language, to assert that the Plaintiff was immediately entitled to the full policy limits of her policy in the event of a fire which totally destroyed her mobile home and its contents. Because fraudulent joinder exists, the presence of Morris Insurance Services, Inc. in this action is to be disregarded in determining the existence of diversity and Morris Insurance Services, Inc. is due to be dismissed with prejudice.").)

8.      Instead of filing a motion to remand as the undersigned anticipated (*see* Doc. 7), plaintiff simply filed a response to the motion to dismiss Morris and therein takes the position that she has, in fact, stated valid fraud claims against defendant Morris (*see* Doc. 8). Of course, a finding by this Court that plaintiff has stated valid fraud claims against Morris would require remand since the presence of Morris would destroy diversity; therefore, the undersigned need consider whether the removing defendants have carried their heavy burden of establishing fraudulent joinder. (*See id.*)

> The crux of Ms. Waldrup's claims against Morris revolve around what information Morris provided or failed to provide to her prior to her purchase of the policy at issue. The Defendants assert that it is legally impossible for Ms. Waldrup, under Alabama law[,] to prevail on the claims against Morris. However, it is unquestioned that insurance agents and brokers may be found personally liable for misrepresentation[s], suppression[s] of material facts and concealment[s] in the sale of an insurance policy. *Bedford v. Connecticut Mutual Life Insurance Company*, 916 F.Supp. 1211, 1214 (M.D. Ala. 1996) . . . . The question of whether a party has a duty to communicate or disclose information must be determined [on] a case-by-case basis and taking into consideration several factors including the relation of the parties, the value (materiality) of the particular fact, the relative knowledge of the parties, and other circumstances. *Bedford*, 916 F.Supp. at 1215.

As the Defendants point out in their motion, the policy states:

> 5.      How We Pay For A Loss

. . . (b)  Actual Cash Value. If you do not repair or replace the damaged, destroyed or stolen property, payment will be made on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the policy declarations page for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

The Defendants attempt to simplify the claims in the complaint by stating that Ms. Waldrup was under the impression that the policy is a "stated value" policy rather than an "actual cash value" policy and that Ms. Waldrup should have read her policy. This assertion is an oversimplification of the basis for the complaint. The critical fact in this suit is that Ms. Waldrup's manufactured home was depreciated by 62% in a period of forty-one days. The policy is fraudulent on its face because it fails to define "actual cash value," and fails to indicate under what circumstances Allstate will or will not make a deduction for depreciation. As such, Morris would have been the only source of that information. Furthermore, the policy itself provides that Allstate "uses local independent insurance agencies to provide customers with information and high quality service in connection with their insurance buying decisions." Since Morris was Ms. Waldrup's only source of information with regards to those terms, it is clear that the information communicated by Morris, or withheld by Morris, with regards to the "actual cash value" and the "depreciation calculation" provides Ms. Waldrup with a colorable basis for the claims against Morris.

(*Id.* at 3-4 (internal citations and emphasis omitted).)

9.      In opposition to plaintiff's response, the removing defendants maintain that Waldrup could not have reasonably relied on any alleged misrepresentation or suppression by Morris. (Doc. 9, at 6-16.)

Here, Plaintiff's basic allegations seem to be that Plaintiff, through alleged misrepresentation and suppression, believed that upon a total loss of the mobile home she would be entitled to the **entire policy limit.**

.    .    .

In essence, Plaintiff asserts that due to misrepresentation or suppression by Morris Allstate's policy terms requiring payment of actual cash value before replacement cost and any corresponding deductions for depreciation were not disclosed. Instead, Plaintiff contends it was represented that the total policy limits would be due in the event of a fire. The question becomes: "Could any such representation have been reasonably relied upon considering the information and disclosures given to the Plaintiff."

.    .    .

In <u>Foremost Ins. Co. v. Parham</u>, 693 So.2d 409 (Ala. 1997), the Alabama Supreme Court returned to "the 'reasonable reliance' standard most closely associated with <u>Torres v. State Farm Fire & Casualty Co.</u>, 438 So.2d 757 (Ala. 1983)." <u>Foremost</u>, 693 So.2d at 421. In <u>Torres</u>, the Court affirmed summary judgment on fraud claims based upon reasoning fully applicable to Plaintiff's claims:

> Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. **In order to recover for misrepresentation, the plaintiffs' reliance must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover.**

<u>Torres</u>, 438 So.2d at 758-59 . . . .

Under the reasonable reliance standard, there can be no misrepresentation or suppression that is contrary in substance to the language of the documents governing the rights of the parties to a transaction. This point was made exceptionally clear in Webb v. Reese, 505 So.2d 321 (Ala. 1987). In Webb, the Alabama Supreme Court decided a case in which the plaintiff made an allegation of fraud based on a representation which was contrary to the terms of the contract. In Webb, the court stated "[n]o useful purpose would be served by reciting the facts here" because even if the defendant did make the alleged misrepresentation, it was contrary to the terms of the contract and the plaintiff "had no legal right to rely on that statement." Id. at 322. In affirming the judgment in favor of the defendant, the Court held that the plaintiff "**is not authorized to disregard the express terms of the contract and rest her claim on fraud, claiming that she relied on a statement which is contrary to the contract terms."** Id. []

The fundamental deficiency in the Plaintiff's allegations is further evidenced by the Court's opinion in Syx v. Midfield Volkswagen, Inc., 518 So.2d 94 (Ala. 1987). In Syx the Alabama Supreme Court again affirmed summary judgment in a fraud action brought by a plaintiff whose allegations were contrary to the documents received. In that case, the plaintiff applied for automobile insurance at the time he purchased a new vehicle. The plaintiff received a copy of the insurance policy in the mail shortly after completing his application for insurance. The plaintiff alleged that he was told that he was getting "full coverage" insurance which would include liability coverage. However, the policy sent to the plaintiff did not provide for liability coverage. The Court held:

> On the authority of Torres we hold, as a matter of law, that because the plaintiff in the present case was put on notice that he did not have liability coverage, **his reliance on any statement to the contrary that might have been made by the representative of Midfield Dodge was unreasonable.** Therefore, summary judgment in favor of the defendants was proper.

[] The Plaintiff's Complaint alleges that Morris Insurance Services, Inc. willfully and maliciously misrepresented the nature of the

insurance. However, the information Plaintiff alleges was misrepresented is directly contrary to the documents which form the transaction to obtain this policy <u>and</u> the language of the policy itself. The evidence before this Court demonstrates that Plaintiff signed an application which clearly anticipated a distinction between actual cash value and replacement cost. In fact, the application signed by the Plaintiff noted that depreciation may be applied:

> "If you have selected the actual cash value endorsement, depreciation will be a factor taken into consideration to develop your premium. In the event of a covered loss, there may be a deduction for depreciation applied to any payment we make."

.    .    .

[T]he language of the insurance policy addresses the manner in which payment would be made and notes that "payment will be made on an actual cash value basis." The policy goes on to note that there "may be a deduction for depreciation." However, after an actual cash value payment has been made, the insured is allowed 180 days within which to replace the property. In that event, the insured can obtain the full replacement cost. Similar policy provisions which provide that payment will be made on an actual cash value basis and a replacement cost payment will be made upon the actual replacement of the property have long been held valid and enforceable. In fact, Alabama Courts have found that the necessity of replacing property before receiving the full replacement cost coverage is a legitimate condition precedent to receiving the full replacement cost. <u>Huggins v. Hanover</u>, 423 So.2d 147 (Ala. 1982); <u>State Farm Fire & Casualty v. Ponder</u>, 469 So.2d 1262 (Ala. 1985).

"Under the reasonable reliance standard, a person cannot blindly rely on an agent's oral representations to the exclusion of written disclosures in a contract." <u>BSI Rentals, Inc. v. Wendt</u>, 893 So.2d 1184, 1191 (Ala.Civ.App. 2004).

(*Id.* at 6, 7, 7-10 & 11-12 (emphasis in original; some internal citations omitted).)

## <u>CONCLUSIONS OF LAW</u>

**A.** **Jurisdiction in General.**

1.      There can be no doubt but that "[f]ederal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001) (citation omitted); *see also Allen v. Christenberry*, 327 F.3d 1290, 1293 (11th Cir.) ("[R]emoval statutes should be construed narrowly, with doubts resolved against removal."), *cert. denied*, 540 U.S. 877, 124 S.Ct. 277, 157 L.Ed.2d 140 (2003); *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court."); *see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]" (internal citations omitted)). Moreover, the removing defendant must bear "the burden of demonstrating federal jurisdiction." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 n.4 (11th Cir. 1998) (citation omitted); *see also McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) ("[T]he party invoking the court's

jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction."). Stated differently, because federal courts are courts of limited jurisdiction "[i]t is . . . presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Kokkonen, supra*, 511 U.S. at 377, 114 S.Ct. at 1675 (internal citations omitted).

2. Where, as here, jurisdiction is predicated on diversity of citizenship pursuant to 28 U.S.C. § 1332 (*see* Doc. 1, at ¶ 11 ("This action could have originally been brought in this Court pursuant to 28 U.S.C. § 1332 in that it is a civil action wherein the matter in controversy exceeds $75,000 exclusive of interest and costs and there is diversity of citizenship among the parties Plaintiff and Defendants.")),[8] the removing defendants bear the burden of establishing complete diversity of citizenship, that is, that the plaintiff is diverse from all the defendants, *Triggs, supra*, 154 F.3d at 1287 (citation omitted), and, in addition, must establish by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement, *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996) ("[W]e hold

---

[8]     Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1).

where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75,000] jurisdictional requirement."), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

3.      The focus of this opinion is whether the removing defendants have established by clear and convincing evidence that defendant Morris was fraudulently joined to defeat diversity of citizenship.

### B.      Whether Complete Diversity of Citizenship Exists.

4.      As previously indicated, the diversity statute, 28 U.S.C. § 1332, demands complete diversity, such that plaintiff may not be a citizen of the same state as any defendant. *See, e.g., Florence v. Crescent Resources, LLC,* 484 F.3d 1293, 1297 (11th Cir. 2007) (recognizing "necessary corollary" of diversity jurisdiction that "complete diversity of citizenship" is required); *Legg v. Wyeth*, 428 F.3d 1317, 1320 n.2 (11th Cir. 2005) ("28 U.S.C. § 1332 requires 'complete diversity'-the citizenship of every plaintiff must be diverse from the citizenship of every defendant.").[9]

---

[9]      Mere diversity, in and of itself, is not sufficient to create jurisdiction under § 1332 since "the court is obligated to assure itself that the case involves the requisite amount in controversy." *Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000) (citations omitted). There is no need for this Court to address the amount in (Continued)

5. "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs, supra,* 154 F.3d at 1287. Notwithstanding the complete diversity requirement, a non-diverse defendant who is fraudulently joined does not destroy jurisdiction because his citizenship is excluded from the diversity equation. Under well-settled law, a finding of fraudulent joinder is appropriate in circumstances presented here only if "'there is *no possibility* the plaintiff can establish a cause of action against the resident defendant.'" *Henderson v. Washington Nat'l Ins. Co.,* 454 F.3d 1278, 1281 (11th Cir. 2006) (emphasis supplied; citation omitted); *see also Florence, supra,* 484 F.3d at 1299 ("[I]f there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary."); *Triggs*, 154 F.3d at 1287 ("'If there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.'"). Thus, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only

---

controversy requirement, however, since the diversity issue is dispositive of the question of whether this case should be remanded to state court.

have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Id.* (citation omitted); *see also Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998) ("Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court.").

6.     "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties. . . . In making its determination, the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco de Perez*, 139 F.3d at 1380 (citations omitted); *see also Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) ("To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff. . . . The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties."); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989) ("In addressing the issue of fraudulent joinder, the district court should resolve all questions of fact and

controlling law in favor of the plaintiff and can consider any submitted affidavits and/or deposition transcripts.").

> While "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b)," the jurisdictional inquiry "must not subsume substantive determination." Over and over again, we stress that "the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits."

*Crowe, supra*, 113 F.3d at 1538 (internal citations omitted).

7. "In a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.'" *Pacheco de Perez*, 139 F.3d at 1380-1381 (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)).

> In terms of this circuit's law, the main point for us is this one: For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law *might* impose liability on the facts involved." Because the procedures are similar while the substantive standards are very different, district courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them.

> In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims. Although we

have said that district courts may look beyond the face of the complaint, we emphasize that the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent.

*Crowe*, 113 F.3d at 1541-1542 (internal citations omitted).

8.     Because a removing defendant must show by clear and convincing evidence that there is no possibility the plaintiff can establish a cause of action against the resident defendant, *Henderson,* 454 F.3d at 1281, it is no surprise that courts describe the burden on the removing party to prove fraudulent joinder as a "heavy one." *Crowe,* 113 F.3d at 1538 (citation omitted).

9.     Since Waldrup and defendant Morris are Alabama citizens for diversity purposes, the removing defendants predicate removal jurisdiction under § 1332 on their argument that the citizenship of Morris does not count in the diversity analysis since it was fraudulently joined. More specifically, the removing parties have distilled their argument to the following: plaintiff cannot maintain her fraud claims against the resident defendant inasmuch as she cannot show that she reasonably relied upon any alleged misrepresentation or suppression by Morris. (Doc. 9, at 6-13; *compare id. with* Doc. 1, at 7-11.)[10] While

---

[10]     "'The elements of fraud are: (1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence.'" *Allstate Ins. Co. v. Eskridge*, 823 So.2d 1254, 1258 (Ala. 2001) (citation omitted). The Alabama Supreme Court, in a recent case, reiterated (Continued)

the undersigned fully appreciates the removing parties' "defense" that Waldrup could not have reasonably relied on Morris' alleged misrepresentations or suppressions, same does not warrant a finding by this Court that there is no possibility the plaintiff can establish a fraudulent misrepresentation or suppression claim against Morris since, for instance, the written policy language is not wholly inconsistent or contrary to plaintiff's complaint allegations that upon a total loss of the home due to fire she would be entitled to the policy limits (i.e., $68,393.00).[11] *See AmerUS Life Ins. Co. v. Smith*, 5 So.3d 1200, 1207 (Ala. 2008)

that where a plaintiff asserts fraudulent misrepresentation and suppression claims, as Waldrup does here (Doc. 1, Exhibit A, COMPLAINT, at ¶¶ 26-36), "[t]o merit consideration by a jury, both of these claims require some evidence of reasonable reliance, that is, that [plaintiff] reasonably relied upon the alleged false representations . . . or that [he] reasonably relied 'on the state of affairs as it appeared in the absence of the suppressed information.'" *Maloof v. John Hancock Life Ins. Co.,* 2010 WL 3797979, *4 (Ala. Sept. 30, 2010) (not yet released for publication).

[11]     This is because the very policy language defendants point to as establishing that plaintiff could not have reasonably relied upon representations from Morris that in the event of total loss the policy limits would be paid to her is arguably consistent with such a representation since the policy states only that there "***may***" be a deduction for depreciation where payment of actual cash value comes into play.  To the extent it is the defendants' position that *State Farm Fire & Cas. Co. v. Owen*, 729 So.2d 834 (Ala. 1998) forecloses such argument, the undersigned disagrees. This disagreement stems from the fact that the Supreme Court in *Owen*, before reaching the determination that plaintiff had not produced "sufficient evidence to support a finding of 'special circumstances' justifying imposition of a duty to disclose[,]" discussed a litany of factors developed through discovery. *Compare id.* at 843 *with id.* at 842-843 ("In evaluating the question whether State Farm had a duty to speak, we must consider a number of factors: (1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances."). Thus, before this Court (Continued)

("In order to recover for misrepresentation, the plaintiffs' reliance must [] have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover." (internal citations and quotation marks omitted)). Thus, the issue of "reasonable reliance," is much murkier than the removing parties would lead this Court to believe and is not one which the Court should decide (on the merits) in the context of fraudulent joinder. Indeed, a cursory review of Alabama "insurance" case law turning on "reasonable reliance" reveals that the earliest this issue is decided is at the summary judgment stage, of course long after *all* discovery is completed. *See, e.g., Maloof, supra,* at *1 & 4 ("Harriet Maloof and John A. Maloof, Jr., sued John Hancock Life Insurance Company [] and Parker A. Glasgow, an independent insurance agent, in the Jefferson Circuit Court, alleging fraudulent misrepresentation, suppression, breach of contract, negligent and/or wanton failure to procure insurance, and breach of fiduciary duties arising out of Glasgow's sale of two universal life-insurance policies to the Maloofs in 1989 and 1992. The trial court entered a summary judgment in favor of John Hancock and Glasgow on all the

---

could rely on *Owen* in the manner the defendants desire, this case would have to be developed factually through significant discovery. *See id*. at 843.

claims, and the Maloofs appeal[.] . . . The Maloofs' fraudulent-misrepresentation and suppression claims were premised on the allegation that Glasgow misrepresented to the Maloofs that the universal-life policies were in their best financial interests and that they would provide funds that would be available to pay the estate taxes due upon John's death, while at the same time suppressing from them the facts that the policies were actually not in their best interests and that benefits from those policies would not be available to pay estate taxes due upon John's death if he lived beyond approximately age 78. . . . In its order granting John Hancock's and Glasgow's motions for summary judgment, the trial court explained its conclusion that evidence of reasonable reliance was lacking[.]"); *AmerUS Life Ins. Co. v. Smith, supra,* 5 So.3d at 1201 & 1216 (in reversing the trial court and rendering a judgment as a matter of law in favor of AmerUS, the Alabama Supreme Court found that "the insureds failed to present substantial evidence [at trial] indicating that Smith's reliance on Jeffrey's representations was reasonable");[12] *Eskridge, supra,* 823 So.2d at 1258 & 1265

---

[12]     While the undersigned has cited at length only this one reasonable reliance case (*AmerUS*) cited by the defendants in either their removal petition (Doc. 1) or in reply to plaintiff's response (Doc. 9), in truth, all the reasonable reliance cases cited by the defendants were decided on summary judgment or at a later stage in the proceedings. *See Foremost Ins. Co. v. Parham,* 693 So.2d 409 (Ala. 1997) (appeal after jury verdict in favor of plaintiffs); *Boland v. Fort Rucker National Bank,* 599 So.2d 595 (Ala. 1992) (summary judgment); *McConico v. Corley, Moncus & Bynum, P.C.,* 567 So.2d 863 (Ala. 1990) (summary judgment); *Roper v. Associates Financial Services of Alabama, Inc.,* 533 So.2d 206 (Ala. 1988) (summary judgment); *Traylor v. Bell,* 518 So.2d 719 (Ala. 1987) (Continued)

("We first consider Allstate's argument that the trial court erred in denying its motion for a judgment as a matter of law on Eskridge's fraud claim. . . . Because we conclude that, under the circumstances of this case, Eskridge could not have reasonably relied upon Wamboldt's statement that Eskridge could 'just come back to work' as a basis for his fraud claim, it follows that the trial court erred in denying Allstate's motion for a judgment as a matter of law as to that fraud claim. Accordingly, the judgment of the trial court must be reversed, and the cause remanded for the entry of a judgment consistent with this opinion."). What Allstate and Morris are asking this Court to do is to turn the fraudulent joinder standard on its head and rule in their favor on "reasonable reliance" at a stage earlier than any Alabama court has deemed appropriate, all the while ignoring that no discovery in this action has been conducted;[13]  therefore, this Court

_____

(summary judgment); *Syx v. Midfield Volkswagen, Inc.,* 518 So.2d 94 (Ala. 1987) (summary judgment ); *Webb v. Reese,* 505 So.2d 321 (Ala. 1987) (directed verdict); *Torres v. State Farm Fire & Cas. Co.,* 438 So.2d 757 (Ala. 1983) (summary judgment); *BSI Rentals, Inc. v. Wendt,* 893 So.2d 1184 (Ala.Civ.App. 2004) (appeal of non-jury verdict in favor of plaintiff); *Banks v. SCI Alabama Funeral Services, Inc.,* 801 So.2d 20 (Ala.Civ.App. 2001) (summary judgment); *Richardson v. Liberty National Life Ins. Co.,* 750 So.2d 575 (Ala.Civ.App.) (summary judgment), *cert. denied,* 750 So.2d 578 (Ala. 1999).

[13]     It is imperative to note the defendants' reliance on *Foremost Ins. Co. v. Parham, supra*, in removing this case (*compare* Doc. 1, at 10 *with* Doc. 9, at 7-8) and the Alabama Supreme Court's statement in that case in embracing the "'reasonable reliance' standard" that this standard is "a more practicable standard that will allow the factfinder greater flexibility in determining the issue of reliance **based on all of the circumstances surrounding a transaction**, including **the mental capacity, educational** (Continued)

simply cannot find that the evidence in this case clearly and convincingly establishes a lack of reasonable reliance by Waldrup with respect to Morris' alleged misrepresentations/suppressions. In other words, it is clear to the undersigned that the removing parties are effectively asking this Court to enter summary judgment in their favor and thereby improperly subsume a substantive determination of the merits of plaintiff's fraud claims under the veil of a jurisdictional inquiry.[14]

10.    Waldrup's fraud claims against Morris are not obviously "frivolous or fraudulent," *Crowe,* 113 F.3d at 1542; instead they are serious and viable. Because there is a real possibility that Alabama law might impose liability on Morris under the circumstances alleged in the complaint, this Court cannot find

---

*background, relative sophistication, and bargaining power of the parties*." 693 So.2d at 421 (emphasis supplied). At this point in time, there is no evidence in the record regarding any of these factors. Therefore, denial of the defendants' motion to dismiss (Doc. 5) and a remand of this case to the Circuit Court of Washington County, Alabama is the appropriate course of action.

[14]    In truth, the undersigned has probably strayed farther than he should have in addressing the removing parties' argument. In other words, it should suffice in recommending denial of the motion to dismiss and remand of this case that no discovery has taken place and this Court is completely in the dark regarding the aforementioned reasonable reliance factors rather than delving into the language contained in the policy of insurance (i.e., the contract). To the extent the undersigned's foray into the defendants' argument regarding reasonable reliance in this case has merely confused the issue, it need be noted that this specter of confusion is precisely why the Alabama courts have seen fit to reserve judgment on this issue until the summary judgment stage, or later, after all discovery has been conducted.

that joinder of the resident defendant was fraudulent. Therefore, the motion to dismiss filed by the defendants (Doc. 5) is due to be **DENIED** and this action remanded to state court.

## <u>CONCLUSION</u>

For the reasons set forth above, it is **RECOMMENDED** that the motion to dismiss filed by the removing defendants (Doc. 5) be **DENIED** and that this action be **REMANDED** to the Circuit Court of Washington County, Alabama. The removal of this action is substantively deficient.

The instructions which follow the undersigned's signature contain important information  regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 9th day of May, 2011.

   s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection.*  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).      The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

>       A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[15] after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

>       A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded).*  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[15]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).